## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

**v.**                                        **Crim. No. 1:20-cr-48-HSO-RHWR**

**ANTONY DANIEL ABREU**
a/k/a Anthony Abreu and
**DARRELL YOUNG**

## AMENDED[1] MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS ANTONY DANIEL ABREU AND DARRELL YOUNG'S MOTIONS [211] [214] FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR NEW TRIAL

BEFORE THE COURT are Defendant Antony Daniel Abreu's Motion [211] For Judgment Notwithstanding the Verdict Or, In The Alternative, Motion For New Trial in Accordance with Rule 33(a) of the Federal Rules of Criminal Procedure, and Defendant Darrell Young's Motion [214] For Judgment Notwithstanding the Verdict, and/or Motion for a New Trial Pursuant to Rules 33(a) & 33(b)(2) of the Federal Rules of Criminal Procedure. The Government has responded to both Motions. The Court finds that Defendants' Motions [211] [214] should be denied.

## I. BACKGROUND

On May 12, 2020, the Grand Jury returned a two count Indictment [35] against Defendants Antony Daniel Abreu ("Abreu") and Darrell Young ("Young")

---

[1] The Court has amended its previous Order [225] in accordance with the Government's unopposed Motion [232] to Amend. Page 16 has been corrected to note that Abreu's counsel was in possession of the confidential informant's payment records, not his tax returns.

1

(collectively, "Defendants"), charging them with conspiracy to possess with intent to distribute a mixture or substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count 1), and with attempting to possess with intent to distribute 500 grams or more of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (Count 2). Indict. [35] at 1-2.

Both Defendants[2] elected to proceed to a jury trial, which commenced on July 19, 2021, and concluded on July 27, 2021, when the jury returned guilty verdicts on both Counts as to both Defendants. Abreu filed the present Motion [211] on August 5, 2021, and Young filed his Motion [214] on August 9, 2021. Both Motions raise several alleged errors with respect to the Court's rulings on pretrial motions, at jury selection, on evidentiary matters, and on a motion for mistrial. Both also claim that the jury verdict was not supported by the evidence and was against the overwhelming weight of the evidence. The Government opposes both Motions, arguing that Defendants' claims have no merit. Because both Motions raise, for the most part, essentially the same arguments, the Court will address them together.

## II. <u>DISCUSSION</u>

A.   <u>Relevant legal standards</u>

Rule 29 of the Federal Rules of Criminal Procedure provides that a defendant may move for a judgment of acquittal within 14 days of a guilty verdict. Fed. R. Crim. P. 29(c)(1). A motion for judgment of acquittal is a challenge to the conviction on the basis of sufficiency of evidence. *United States v. Uvalle-Patricio*, 478 F.3d

---

[2] The Government also charged Christopher Q. Nguyen in both Counts of the Indictment [35], but he ultimately pled guilty and testified for the Government at trial.

699, 701 (5th Cir. 2007). In evaluating the merits of such a motion, the Court "reviews the record to determine whether, considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc).

Rule 33 of the Federal Rules of Criminal Procedure provides that, upon defendant's motion for a new trial, the trial court may vacate the judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is appropriate where errors have harmed the substantial rights of the defendant, either cumulatively or individually. *United States v. Bowen*, 799 F.3d 336, 349 (5th Cir. 2015). Courts should exercise this power infrequently, "unless warranted by 'exceptional' circumstances." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (citations omitted).

B.   Whether the Court's rulings on pretrial motions were erroneous

1.   The Court did not err in denying Defendant Young's Motions [103] [114] [161] to Sever.

During the course of pretrial proceedings, Young filed two Motions [103] [114] to Sever his case from those of Defendants Abreu and Christopher Q. Nguyen, asserting that Abreu would testify favorably on Young's behalf at trial if the two were tried separately. Mem. [104] at 3. Specifically, Young claimed that Abreu would provide exculpatory testimony if tried separately, but that he would not so testify if tried jointly with Young. *Id.* at 5. Young's third Motion [161] to Sever

raised essentially the same arguments, but added an affidavit from Abreu opining that Young believed he was on a legitimate business trip and that Abreu would testify to that effect at Young's trial if necessary. Mot. [161-3].

The Court has addressed all of Young's arguments on the issue of severance in two previous Orders [127] [170] it entered, which denied his requests for severance. Based upon a review of the entire record, the Court sees no reason to disturb its rulings now, and incorporates them here by reference. As the Court has observed, persons who are indicted together generally should be tried together, especially in conspiracy cases. *United States v. Pofahl*, 990 F.2d 1456, 1463 (5th Cir. 1993). Additionally, as the Court has previously concluded, the statements in the affidavits submitted by Young were conclusory and were not sufficient to justify severance. Order [170] at 6. For the reasons given by the Court in its previous Orders [127] [170], it finds that Young's Motions [103] [114] [161] for Severance were properly denied.

2.   <u>The Court did not err in denying Young's First and Second Motions [162] [164] to Suppress.</u>

Prior to trial, Young filed two Motions [162] [164] to Suppress. His first Motion [162] sought to suppress information obtained from his cell phone pursuant to a search warrant, and argued that the search occurred outside the time authorized by the warrant, making it invalid. Young's second Motion [164] asserted that some of the cell phones seized belonged to one of his co-Defendants.

The Court held an evidentiary hearing on both of Young's Motions [162], [164] on July 7, 2021, and denied them on the record in open court. The Court

determined that the agent's affidavit supporting the warrant contained sufficient information for the Magistrate Judge to issue a search warrant for the phones, and that the phones were properly seized and searched by the deadline provided in the warrant. For the same reasons it stated on the record at the hearing, the Court finds that Young's Motions [162], [164] to Suppress were properly denied.

3.   The Court did not err in denying Young's Pretrial Motions [108] [134] [140] in Limine.

Young filed three pretrial Motions [108], [134], [140] in Limine seeking to prevent the Government from introducing evidence of his previous convictions of drug felonies, which he asserted were more than 10 years old. The Court denied these Motions [108], [134], [140] without prejudice, on grounds that Young's requests were premature until such time as Young decided whether to testify at trial and the Government attempted to offer such evidence. Text-only Order November 12, 2020; Text-only Order December 29, 2020; Text-only Order, March 15, 2021.

On the fifth day of trial, while the jury was on a break, Young's counsel reurged the issue and stated that he essentially wanted an advisory ruling from the Court so that Young could decide whether or not to testify. The Court reviewed the relevant evidentiary rules for the admission of prior convictions and emphasized that the Government would have a higher threshold to meet to introduce the convictions if they were greater than 10 years old. The Court had not seen the convictions and advised counsel that if the evidence were offered, the jury would be excused for any discussion on the matter before the evidence would be allowed.

Ultimately, Young elected not to testify, and for the reasons previously given in its

pretrial rulings and at trial, the Court's resolution of Young's Motions [108], [134],

[140] in Limine does not warrant relief.

4.    The Court did not err in denying Young's Motion [163] for a Continuance of
the trial.

Young contends that the Court should have granted Young's pretrial Motion

[163] for Continuance of the trial. Young's counsel filed the Motion [163] on June 16,

2021, asserting that he was concerned that there may be incriminating recordings

on the cell phones that were seized during Young's arrest. He argued that the

Government should be prohibited from introducing these potential recordings at

trial because counsel would need additional time to contact an expert to test the

recordings and ensure that they had not been altered. Mot. [163] at 3.

The Court heard arguments on the Motion [163] at the final pretrial

conference held on June 22, 2021, and denied it without prejudice on the record and

in an Order [165]. Among other things, the Court advised Young's counsel that he

could reassert the Motion when he was no longer speculating as to the existence of

these recordings. Young never renewed the request. The Court made a number of

other findings on this Motion [163] as well, and finds no reason to change them now.

Order [165]; Min. Entry June 22, 2021. For the same reasons it stated on the record

at the pretrial conference when it denied the Motion [163] initially, the Court finds

that it did not err in denying the Motion [163] for Continuance.

C.    Whether the jury verdict was supported by the evidence or was against the
overwhelming weight of the evidence

Both Defendants argue that the jury verdict was not supported by the evidence and was against the overwhelming weight of the evidence, such that the Court should have granted their requests for a judgment notwithstanding the verdict at the close of the Government's case-in-chief.

Federal Rule of Criminal Procedure 29 provides that the standard for granting a judgment of acquittal is "whether a reasonable jury could conclude that the relevant evidence, direct or circumstantial, established all of the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the verdict." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001) (citations omitted). As to the evidence presented, courts have stated that it need not make the Government's case absolutely certain.

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 616 (5th Cir. 1991)(citations omitted).

Both Defendants were charged with Conspiracy (Count 1) and Attempt (Count 2). In order to support their convictions for conspiracy, the Government had to prove several elements, specifically, that "a conspiracy existed, that the defendant knew of the conspiracy, and that, with that knowledge, he voluntarily became part of it." *United States v. Williams*, 264 F.3d 561, 577 (5th Cir. 2001). "An individual 'need not know all the details of the unlawful enterprise or . . . the exact number or identity of all the co-conspirators' in order to be liable as a co-

conspirator. Nor does '[t]he fact that a conspirator is not present at, or does not participate in, all of the conspiratorial activities . . . exonerate him.'" *United States v. Chapman*, 851 F.3d 363, 378 (5th Cir. 2017) (citations omitted).

The Government had to show, as to both Defendants, first, that two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute a controlled substance; second, that each Defendant knew of the unlawful purpose of the agreement; third, that each Defendant entered into the agreement willfully and with the intent to further its unlawful purpose; fourth, that the overall scope of the conspiracy contained at least five kilograms of cocaine; and fifth, that each Defendant knew or reasonably should have known that the scope of the conspiracy involved at least five kilograms of cocaine. PATTERN JURY INSTRUCTIONS: FIFTH CIRCUIT (CRIMINAL) § 2.15A (2019); *see also United States v. Peterson,* 244 F.3d 385, 389 (5th Cir. 2001).

As to Count 2, the Government was required to prove that Defendants committed a "substantial step" towards the crime attempted. *See United States v. Patterson,* 634 F. App'x 416, 420 (5th Cir. 2015). Specifically, the Government had to prove first, that both Defendants intended to commit the crime of possession of a controlled substance with intent to distribute, and second, that both Defendants committed an overt act that constituted a substantial step towards the commission of a crime, and that strongly corroborated their criminal intent and amounted to more than mere preparation. PATTERN JURY INSTRUCTIONS: FIFTH CIRCUIT

(CRIMINAL) § 1.34 (2019); *see also United States v. Resendiz-Ponce,* 529 U.S. 102, 107 (2007).

The Court has conducted a thorough review of the record and the evidence presented at trial, and based upon that review it is satisfied that the evidence was sufficient to support the jury's verdict to convict both Defendants on both Counts.

1.    <u>The evidence as to Abreu</u>

The evidence presented at trial was more than sufficient for a reasonable jury to convict Abreu. This included, but was not limited to, testimony of Abreu's co-conspirator, Christopher Nguyen, who testified as to the agreement he reached with Abreu to pursue the purchase of cocaine. The evidence also included Government exhibits consisting of voluminous transcripts of recorded telephone calls between Abreu and confidential informants, WhatsApp messages between Abreu and confidential informants, and other communications detailing the plan for exchanging money for cocaine. In addition, both confidential informants and an undercover agent testified at trial as to Abreu's activities in furtherance of the crimes charged in the Indictment.

The Government also presented a video showing Abreu cutting into a brick of cocaine and testing its quality, and evidence that Abreu was arrested at the location where the cocaine sale was supposed to occur with $88,000.00 in cash in his possession. Additionally, at the rented residence where Abreu was staying with the other co-conspirators, agents discovered materials commonly used for drug

packaging and almost $100,000.00 in cash hidden inside a vehicle parked in the garage.

In short, this and the other evidence at trial supported the jury's verdict against Abreu.

2. The evidence as to Young

The evidence presented at trial was likewise more than sufficient for a reasonable jury to convict Young on both Counts. During the Government's direct examination of Nguyen, he detailed the conspiracy to purchase cocaine, which included Young's participation by traveling to Gulfport with Nguyen and purchasing supplies to repackage the cocaine. Nguyen also testified that Young was present when Defendants concealed cash in an Acura vehicle and helped prepare to ship it to Gulfport for purchase of the cocaine. Nguyen further testified that Young knew how to open the hidden trap inside the Acura where the money was hidden, and watched him do so.

Young was arrested at the location where the cocaine sale was supposed to occur with $88,000.00 in cash in his possession, and agents found packaging materials and almost $100,000.00 hidden inside the Acura at the rental house where Young was staying with the co-Defendants. Nguyen further testified that this same vehicle had previously been sent to complete a cocaine transaction in California.

In sum, the Court finds that the jury's verdict as to Young was supported by more than sufficient evidence. Young's Motion [214] should be denied in this regard.

D.    Whether the Court erred in its rulings related to jury selection and opening statements

1.    The Court did not err in allowing the Government to strike Juror number 23 and Juror number 32.

Abreu and Young both allege that the Government's use of peremptory strikes against two prospective jurors of color during jury selection violated *Batson v. Kentucky*, 476 U.S. 79 (1986). Defendants also raised this issue at trial. The Court found on the record during jury selection that Defendants had not shown a pattern of discrimination by the Government in striking the two panelists and that it had articulated race-neutral reasons for removing them.

With regard to Juror 23, the Government offered several race-neutral explanations for striking her, including her apparent disapproval of the Court's COVID protocols and the fact that she had fallen asleep during voir dire. The Government further cited the fact that this Juror had voiced strong opinions against the Government's use of paid confidential informants as witnesses at trial. Because the Government's case relied heavily on the use and testimony of paid confidential informants, the Court found that the Government's use of a preemptory strike against Juror 23 was for valid, race-neutral reasons.

Juror 32 similarly voiced opinions against the Government's use of paid confidential informants, and the Government stated that this Juror also mentioned that she had pain issues, which concerned it that she may have trouble

concentrating. Juror 32 identified her race as "other," on her juror information form, but the Court considered Defendants' challenge on alternate bases – that is, the Court considered the *Batson* claim as if Juror 32 was included for *Batson* purposes and also as if she was not. As the Court found on the record, even including Juror 32 for *Batson* purposes, these two strikes were not sufficient to establish a prima facie case of discrimination under *Batson*, and even if they were, the prosecutor's stated reasons were valid, race-neutral ones for the use of the peremptory strikes. The Court remains of the view that it did not err in its ruling and that Defendants are not entitled to relief on this ground.

2.   The Court did not err in failing to declare a mistrial at Young's request due to the racial composition of the venire.

The Court addressed Defendant Young's complaints about the racial composition of the venire at length on the record on the second day of trial. Min. Entry July 20, 2021. The Court denied the challenge as untimely but also addressed it on the merits. Among other things, the Court determined that no equal protection violation had occurred, because relevant precedent required an independent showing that any discrepancy in the racial composition of the venire be systematic, *see, e.g., United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001), and counsel had made no such showing. For this and the other reasons it stated on the record at trial, the Court finds that Young's request for a mistrial on this basis was properly denied.

E.   The Court did not err in granting the Government's pretrial Motion [179] in Limine on Abreu's entrapment theory.

The Government filed a pretrial Motion [179] to prohibit Abreu's counsel from referring to the entrapment defense during voir dire and opening statements, until Abreu could satisfy the threshold evidentiary requirements for the availability of the defense. The Court granted the Motion, and Abreu contends that this was error. In order to make out an entrapment defense, a defendant must make a prima facie showing of (1) his lack of predisposition to commit the offense, and (2) some governmental involvement and inducement more substantial than simply providing an opportunity to commit the offense. *See, e.g., United States v. Ogle,* 328 F.3d 182, 185 (5th Cir. 2003).

Because voir dire occurs prior to a defense counsel's ability to introduce any evidence, naturally Abreu was not able to establish this prima facie case until the introduction of evidence began, and courts have rejected the claim that counsel should be allowed to inquire about entrapment during voir dire. *See United States v. Cervantes,* 706 F.3d 603, 613-14 (5th Cir. 2013). The Fifth Circuit has held that it is within the trial court's discretion to refuse counsel's request to ask about entrapment at voir dire. *Id.*

The Court addressed this issue and explained its ruling on the record on the first day of trial. For the same reasons the Court articulated at the time, this Motion was properly granted and Abreu is not entitled to the relief he seeks.

F.    <u>Evidentiary issues</u>

1.    <u>The Court did not err in allowing introduction of evidence outside the timespan stated in the Indictment.</u>

13

Young argues that prosecutors improperly presented evidence of events which took place outside the timeframe of the conspiracy alleged in the Indictment, which charged that the criminal conduct occurred "at least as early as March 2020 and continuing up to April 20, 2020." Indictment [35] at 1. At trial, prosecutors sought to introduce evidence of instances of Young's conduct which occurred approximately two months prior to March 2020.

The Fifth Circuit has held that the exact time or date of an offense charged in an indictment is not an essential element of the offense. *United States v. Valdez*, 453 F.3d 252, 259–60 (5th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied*, 549 U.S. 976 (2007). When an indictment contains "on or about" language with regard to dates of the events alleged, the Government is "not required to prove the exact date; it suffices if a date reasonably near is established." *United States v. Trigueros*, 259 F. App'x 678, 680 (5th Cir. 2007) (holding there was "no material variance between the date in the indictment and the evidence presented at trial" when there was a four-month difference between the date of action charged in the indictment and the dates proven at trial).

Evidence of events occurring outside the timeframe of the conspiracy is also permissible. Evidence showing relevant background to the conspiracy, such as how the conspiracy formed or operated, is admissible to establish knowledge of the conspiracy and intent to join in and advance the conspiracy. *United States v. Lokey*, 945 F.2d 825, 835 (5th Cir. 1991). In addition, because the Government presented sufficient evidence of conduct by Young that occurred during the range of dates in

14

the Indictment, Young's substantial rights were not harmed. *See United States v. Rice,* 431 F. App'x 289, 293 (5th Cir. 2011).

Additionally, any actions presented to the jury that occurred outside the timeframe of the Indictment would be admissible under Federal Rule of Evidence 404(b). "Evidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an 'extrinsic' offense within the meaning of Rule 404(b), and is therefore not barred by the rule." *United States v. Dula,* 989 F.2d 772, 777 (5th Cir. 1993). "In developing proof of intent and motive, the prosecution may offer all of the surrounding circumstances that were relevant." *Id.* (citing *United States v. Mancuso,* 444 F.2d 691, 695 (5th Cir.1971)). The events the Government introduced which occurred outside the timeframe of the Indictment further developed the proof of the requisite intent and motive and were admissible for this reason as well.

In sum, the Court addressed this argument on the record at trial, and for the reasons it stated at that time, it concludes that this evidence was properly admitted.

2.  <u>The Court did not err in refusing to allow Abreu's counsel to call the confidential informant's wife as a witness.</u>

Abreu maintains that the Court erred when it refused to permit him to call a paid confidential informant's wife as a witness for purposes of testifying as to her husband's tax returns. Counsel for Abreu indicated at trial that he wanted to inquire about the confidential informant's non-payment of taxes on his income earned as an informant in this case. The confidential informant had testified that

his wife handled the tax returns and that he did not know whether the income had been reported.

Abreu was in possession of the confidential informant's payment records for several weeks prior to trial, but did not list the wife on the Witness List. Perhaps more importantly, the Court noted that the income tax returns for the year in which the confidential informant was paid for his work on this case were not yet even due, and the payment at issue would not appear on previous tax returns about which defense counsel wished to question the spouse. For these reasons, and for the additional ones given by the Court on the record at trial, Abreu's attempts to call the confidential informant's wife to testify were properly denied.

3.    The Court did not err in refusing to admit the purported contract to purchase real estate offered by Abreu.

On the penultimate day of trial, Abreu sought to introduce a document that purported to be a contract between Abreu and a Government witness, who had already testified, for the purchase of real estate located in the Dominican Republic. The Court refused to admit this exhibit for a number of reasons, which it stated on the record at the time. First, the document had never been produced and was not properly authenticated, and Abreu was not able to offer testimony of a witness with non-hearsay knowledge of the document, or any other evidence, to confirm that the document was in fact what it purported to be. Fed. R. Evid. 901. In addition, the document was not in English and no translated copy had been prepared or presented. Finally, because the Government's witness had already testified and had been excused, he was no longer available to testify on the subject of the contract. In

16

short, for reasons it stated at trial, the Court finds that it did not err in refusing to admit this evidence.

4.    The Court did not err in allowing into evidence the transcripts of audio-taped conversations between Abreu and his non-testifying relative, Migue.

Abreu argues that the Court should not have admitted transcripts of recorded telephone conversations between him and his relative, Migue. As the Court discussed at trial, Federal Rule of Evidence 801(d)(2)(e) permits the admission of statements of co-conspirators made in furtherance of a conspiracy as non-hearsay, and the Court found on the record at trial that Migue qualified as a co-conspirator. Admission of the transcripts did not violate Abreu's confrontation rights, because statements by co-conspirators do not implicate the Confrontation Clause. *See United States v. Vasquez*, 234 F. App'x 310, 312 (5th Cir. 2007). Nor was it necessary for defense counsel to have the opportunity to cross-examine Migue because the statements were not testimonial in nature. *Brown v. Epps,* 686 F.3d 281, 287 (5th Cir. 2012).

Abreu also claims that, because no one could identify Migue's voice in Court, there was no way to know whether or not the transcripts were actually conversations with Migue; however, the communications contained in Government's Exhibit 56 make several direct references to him by name. For these reasons, and for the reasons stated on the record at trial, it was not error to admit these transcripts.

G.     Whether the jury instructions were proper

1.     Abrue's entrapment defense

Abreu next contends that the Court erred in giving its entrapment instruction to the jury, claiming that the Court's additions to the model instruction weakened his defense. Mot. [211] at 6-8. Based upon its review of the record, the Court is satisfied that it thoroughly addressed this issue on the record prior to charging the jury. The language to which Abreu objects was quoted directly from Fifth Circuit precedent on the issue of entrapment. *See United States v. Nelson*, 732 F.3d 504, 514 (5th Cir. 2013); *United States v. Theagene*, 565 F.3d 911, 920 (5th Cir. 2009); *United States v. Reyes*, 239 F.3d 722, 739 (5th Cir. 2001); *United States v. Brace*, 145 F.3d 247, 262 (5th Cir. 1998) (quoting *United States v. Byrd*, 31 F.3d 1329, 1336 (5th Cir. 1994)).

The Court utilized the Fifth Circuit pattern instruction on entrapment as a starting point and included additional guidance to the jury from the foregoing cases as to the elements of an entrapment defense as it related to the facts of this particular case. For instance, the pattern instruction does not make it clear that evidence of later conduct can also be used to show that the defendant was predisposed to being approached. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 1.30 (2019); *see also, e.g., Brace*, 145 F.3d at 262. ("[e]vidence of the defendant's ready response to the solicitation, as well as evidence of independently motivated behavior that occurs after government solicitation begins, can be used to prove that the defendant was predisposed, i.e., ready and willing to

18

[commit the crime] even before he was contacted by the government") (citations omitted). The Court remains of the view that it was important for the jury to understand this as they considered the evidence, and that omitting this correct statement of law may have led to confusion.

For this reason and for the other reasons stated at trial, the Court is of the opinion that its instruction was proper and Abreu is not entitled to relief on this ground.

2.  <u>Young's misprision theory</u>

Young asserts that the Court erred in refusing his request to instruct the jury on misprision of a felony as a lesser-included offense. However, as the Court determined at trial, misprision is not a lesser-included offense of either conspiracy or attempt, because it is possible to commit the offenses of conspiracy and attempt without establishing each of the elements of misprision. *Schmuck v. United States*, 489 U.S. 705, 716 (1989) ("Where the lesser offense requires an element not required for the greater offense, no instruction is to be given.").

The elements of misprision are that: (1) a felony was committed; (2) defendant had full knowledge that a felony had been committed; (3) defendant failed to notify authorities; and (4) defendant took steps to conceal the crime. FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 2.06 (2019). Because Young could commit the offenses of conspiracy and attempt without satisfying the misprision element of taking steps to conceal the crime, it is not a lesser-included offense. *See generally United States v. Avants,* 367 F.3d 433, 450 (5th Cir. 2004) (holding misprision is not a lesser-included offense of aiding and abetting murder,

19

because misprision requires proof that the defendant failed to notify authorities, while aiding and abetting murder does not require such proof).

Because misprision contains elements not required by conspiracy or attempt, the Court finds that it did not err by refusing to give misprision instructions to the jury.

H.    <u>Whether the Court should have granted a mistrial when the prosecutor commented in front of the jury on Abreu's ability to testify</u>

The Court cautioned Abreu's counsel more than once regarding his statements voicing his client's disagreement with the accuracy of some of the Government's translations of the recorded conversations with the confidential informant, because they amounted to Abreu's counsel testifying on behalf of his client. Later, during Abreu's counsel's cross-examination of the confidential informant, counsel again stated that his client disagreed with the witness on the correct Spanish translation of a document.

The Government objected, stating that "Mr. Davis is attempting to testify for his client as to what Mr. Abreu was going to say. That means if Mr. Abreu is going to say it, he needs to take the witness stand." Counsel then approached for a bench conference and Abreu moved for a mistrial, contending that the Government's attorney was trying to shift the burden of proof to Abreu to take the stand. The Court denied the motion and immediately gave cautionary instructions to the jury that neither Defendant was under any obligation to testify, and that the Government retained at all times the burden to prove guilt beyond a reasonable

doubt. The Court emphasized to the jury that Defendants had no burden to prove their innocence or even to present any evidence.

There is a high burden to satisfy in order to establish that a prosecutor's remarks were in error and that the overturning of a criminal conviction is warranted on the basis of the remarks alone. *United States v. Bennett*, 874 F.3d 236, 247 (5th Cir. 2017). "The ultimate question . . . is 'whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict.'" *Id.* (citations omitted).

The Fifth Circuit employs a two-part test to evaluate whether a prosecutor's statement should be construed as an impermissible comment on a defendant's decision not to testify:

> The test for determining whether a prosecutor's remarks constitute a comment on a defendant's silence is a twofold alternative one: "(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *United States v. Jones*, 648 F.2d 215, 218 (5th Cir. Unit B 1981) (per curiam).
>    As to the first possibility, the prosecutor's intent must be "manifest"; in other words, the test is not met "if some other explanation for his remark is equally plausible." *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir.1977). As to the second, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." *United States v. Carrodeguas*, 747 F.2d 1390, 1395 (11th Cir.1984), *cert. denied*, 474 U.S. 816, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985) (citation omitted).

*United States v. Collins*, 972 F.2d 1385, 1406 (5th Cir. 1992) (finding that a prosecutor's remark during closing argument that "he won't tell anybody what [the money] is for. If it's a real estate deal, tell us," did not violate the defendant's Fifth Amendment rights, because the prosecutor was simply pointing out the

21

inconsistencies between the defendant's trial argument and what he had told investigating agents prior to his indictment).

*United States v. Johnston*, 127 F.3d 380, 396–97 (5th Cir. 1997), appears to be a case factually analogous to this one. There, the prosecutor commented on defense counsel's argument that his client had lived an open life, stating during rebuttal argument that, "if it is so open, why don't you tell us what you do to make [money] in this cash business . . . " *Johnston,* 127 F.3d at 396-97. When challenged on the statement, the prosecutor stated that these comments were referring to the fact that the defendant had not filed income tax returns. *Id.* at 397. The Fifth Circuit concluded that this statement did not violate the defendant's Fifth Amendment rights, because there was a plausible explanation for the statement and the jury would not naturally assume that it was a comment on the defendant's decision not to testify. *Id.*

Here, the Court finds that the Government's statement that "if Mr. Abreu is going to say it, he needs to take the witness stand," was ill-advised, but that it did not violate Abreu's Fifth Amendment rights. With regard to the first part of the *Collins* test, it was apparent at the trial that the prosecutor's manifest intent was not to comment on Abreu's decision not to testify; rather, the Government's attorney was objecting to defense counsel testifying on behalf of his client, a subject about which the Court had previously cautioned counsel. With regard to the second part of the test, in context, the jury would not have "necessarily" understood the prosecutor's comment to be related to Abreu's silence; her comment was an attempt

to explain why defense counsel's comment was impermissible and objectionable. Finally, the Court gave the jury additional cautionary instructions on Defendant's right not to testify.

For these reasons and for those stated on the record at trial, the Court finds that a mistrial was not warranted.

I.   <u>The Court did not err in sustaining any objections or motions made by the Government or in overruling any objections or motions made by Defendants.</u>

Abreu raises a general and conclusory argument at the end of his Motion [211] that "the Court clearly erred in sustaining any objection made by the United States Government and further overruling any objections made by the defendant, Antony Daniel Abreu" and that "the Court erred in not sustaining any and all motions filed by the defendant Antony Daniel Abreu and further erred in sustaining any motions filed by the Government." Mot. [211] at 8-9. To the extent the Court need address this vague and general contention, having reviewed the record it finds that it did not err in sustaining any of the Government's objections or motions, or in overruling any of Defendants' objections or motions, for the reasons it stated when resolving those matters. Even if it did, such errors, either alone or in combination, were not sufficient to justify the relief Abreu seeks.

In sum, for the reasons stated here and for those given at trial, Defendants' Motions [211], [214] should be denied.

### III.   <u>CONCLUSION</u>

Based upon a review of the entire record and in light of relevant legal authority, the Court finds that Defendants Antony Daniel Abreu and Darrell Young

have not shown that they are entitled to a judgment of acquittal or, in the alternative, a new trial.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Antony Daniel Abreu's Motion [211] For Judgment Notwithstanding the Verdict Or, In The Alternative, Motion For New Trial in Accordance with Rule 33(a) of the Federal Rules of Criminal Procedure, and Defendant Darrell Young's Motion [214] For Judgment Notwithstanding the Verdict, and/or Motion for a New Trial Pursuant to Rules 33(a) & 33(b)(2) of the Federal Rules of Criminal Procedure, are both **DENIED**.

**SO ORDERED AND ADJUDGED,** this the 10th day of November, 2021.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE